UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

GREGORY ANDERSON,

**COMPLAINT
WITH JURY DEMAND**

Plaintiff,

-against-

**CV 12 - 6301**

THE CITY OF NEW YORK; NELDA M.
ZEIGLER, Deputy Commissioner, Officer of Equal
Employment Opportunity; Lieutenant
DOMINICK VALENTI; Sergeant MILLIGAN;
Lieutenant NICOLA VENTRI; and sergeant KLIEN;
each being sued individually and in their official capacities
as employees of the NYPD.

Defendants.

------------------------------------------------------------------------X

Plaintiff, GREGORY ANDERSON, by his attorneys, CRONIN & BYCZEK, LLP, as

and for her complaint against Defendants, respectfully set forth the following:

### NATURE OF ACTION

1.     This action is hereby commenced for the purpose of seeking to secure protection

of, and to redress the deprivation of, rights secured by the United States Constitution, Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, 42 U.S.C. §1983, New York State

Executive Law §296, and New York City Human Rights Law §8-107 et. seq., providing for

relief based upon Defendants' unlawful employment practices of engaging in discrimination

based upon Plaintiff's race, color, retaliation against Plaintiff for engaging in the protected

activity of formally complaining of said discrimination, and hostile work environment.

2.     Additionally, this claim seeks money damages, both accrued and prospective, on

behalf of the Plaintiff and attorneys fees pursuant to 42 U.S.C. §1988.

## JURISDICTION

3.     The jurisdiction of this Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. §§1343(3) and (4), 28 U.S.C. §1331, as well as 42 U.S.C. §2000e through §2000e (15).

4.     This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. §1367.

5.     Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

6.     The rights, privileges and immunities sought herein to be redressed are those secured by the First Amendment freedom of speech and by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, and provisions against, race, color and retaliation in employment based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, 42 U.S.C. §1983, along with applicable provisions of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

7.     On or about May 16, 2012, Plaintiff, GREGORY ANDERSON, in accordance with applicable law, filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which organization receives and investigates charges of discrimination as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended.

8.      Said Verified Complaint charged that Defendants engaged in unlawful employment discrimination practices based upon race, disability, and in retaliation for engaging in protected activity.

9.      On September 21, 2012, the EEOC issued "Right to Sue" Letter advising Plaintiff of the completion of her prerequisites to file suit in federal court. Plaintiff, received said Right to Sue Letter on September 26, 2012. A copy of the "Right to Sue" Letter issued to Plaintiff is annexed hereto as **Exhibit "A".**

## VENUE

10.     Venue is proper within the Eastern District of this Court, City of New York, State of New York, as the course of Defendants' conduct took place within the boundaries of the County of Queens, State of New York, and the instant causes of action are based upon violations of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

## PARTIES

11.     Plaintiff is a Black male citizen of the United States of America and is over twenty-one (21) years of age, a resident of Orange County and is an employee of defendant THE CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the Police Department City of New York (hereinafter referred to as the "NYPD"). For purposes of this litigation, defendant CITY may be identified interchangeably using CITY or NYPD to identify the employer which is the CITY.

12.     Defendant CITY was and is a municipal corporation organized and existing under and by virtue of the law of the State of New York, and at all relevant times was plaintiff's

employer, with its central offices in the county of New York, and diverse other offices and facilities throughout the State of New York.

13.    Defendant CITY is an employer within the definitions contained in 42 U.S.C.§ 2000-E, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

14.    Defendant DEPUTY COMMISSIONER NELDRA M. ZEIGLER (hereinafter referred to as "ZEIGLER"), at all times relevant to this complaint, was a DEPUTY COMMISSIONER at the NYPD OFFICE OF EQUAL EMPLOYMENT OPPORTUNITY. At all times relevant, DEPUTY COMMISSIONER ZEIGLER is sued in her individual and official capacities.

15.    Defendant LIEUTENANT DOMINICK VALENTI (hereinafter referred to as "VALENTI") at all times relevant to this complaint was an NYPD Lieutenant. At all times relevant, VALENTI is sued in his individual and official capacities.

16.    Defendant SERGEANT MILLIGAN (hereinafter referred to as "MILLIGAN") at all times relevant to this complaint was an NYPD Sergeant at the 113th Precinct. At all times relevant, MILLIGAN is sued in his individual and official capacities.

17.    Defendant LIEUTENANT NICOLA VENTRI (hereinafter referred to as "VENTRI") at all times relevant to this complaint was an NYPD Lieutenant and assigned to Harbor Unit. At all times relevant, VENTRI is sued in his individual and official capacities.

18.    Defendant's SERGEANT KLIEN, (hereinafter referred to as "KLIEN") at all times relevant to this complaint was an NYPD Sergeant and assigned to 113TH Precinct. At all times relevant, KLIEN is sued in his individual and official capacities.

## CLAIMS MADE IN PRIOR LAWSUIT FOR BACKGROUND INFORMATION

19.     Plaintiff commenced suit against Defendants CITY; RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN, in the United States District Court, Eastern District of New York, under Docket Number 06 CV 5726.

20.     Plaintiff alleged that in or around 1999, he was transferred into Emergency Services Squad 8.

21.     Plaintiff alleged that in or around 1999, it was commonly known throughout the Special Operations Division that Emergency Services Squad 8, was referred to as the "Slave Ship" because of the number of African-American officers assigned there.

22.     Plaintiff alleged that in or around 1999, Police Officer Peter Lennarello assigned to Emergency Services Squad 8, referred to his former partner Police Officer Curtis Garvey as a "nigger."

23. Plaintiff alleged that while he was partners with Police Officer Curtis Garvey, the management of the Emergency Services Unit under the direct supervision of defendant JAMES C. DEAN refused to train them so they had to train themselves through trial and error.

24.     Plaintiff alleged that while he was partners with Police Officer Curtis Garvey the management of the Emergency Services Unit under the direct supervision of defendant JAMES C. DEAN refused to assign them overtime tours to work.

25.     Plaintiff alleged that in or around 2000, while assigned to Emergency Services Squad 8, he found a noose hanging over his locker. He spoke to his immediate supervisor sergeant Poolt and the noose was removed.

26.    Plaintiff alleged that shortly thereafter, he was transferred from Emergency Services Squad 8, to Emergency Services Squad 2.

27.    Plaintiff alleged that, personnel assigned to Emergency Services Squad 2, were informed by unknown persons that he complained to the Office of Equal Employment Opportunity under the direct supervision of defendant ZEIGLER about the racial discrimination and retaliation that he was experiencing while assigned to Emergency Services.

28.    Plaintiff alleged that upon plaintiff's assignment to Emergency Services Squad 2, defendant O'KEEFE, his direct supervisor, regularly called him names, including "asshole" and "incompetent."

29.    Plaintiff alleged that on or about May 12, 2001, he found a noose handing next to his bin in the garage where the Department vehicles are located at the 90th Precinct.

30.    Plaintiff alleged that in or around August 2001, defendant O'KEEFE told him that his co-workers did not want him in the Division because he filed OEEO complaints.

31.    Plaintiff alleged that he was advised by another police officer that everyone in the Emergency Services Squad did not like him and wanted him transferred from the division.

32.    Plaintiff alleged that shortly thereafter, he wrote a letter to defendant RAYMOND W. KELLY to complain about the racial discrimination and retaliation he was experiencing while assigned to Emergency Services.

33.    Plaintiff alleged that subsequently he met with his Chief of Staff Former Chief Joseph P. Wench to complain about the racial discrimination and retaliation he was experiencing while assigned to Emergency Services.

34.    Plaintiff alleged that Chief of Staff Former Chief Joseph P. Wench acknowledged that it appeared that [he] was having problems working within that division, but

that the Two Truck Division was a "specialized unit" and that he may encounter difficulties from time to time.

35.    Plaintiff alleged that in or around early 2003, he was transferred into Emergency Services Squad.

36.    Plaintiff alleged that while assigned to Emergency Services Squad 4, defendant MADIGAN verbally threatened him, and when he attempted to defuse the situation by leaving the room, the defendant physically blocked his path.

37.    Plaintiff alleged that defendant WHITE was told about defendant MADIGAN's conduct but did not take any disciplinary action against him.

38.    Plaintiff alleged that on or about August 17, 2003, he filed a complaint with OEEO about the racial discrimination and retaliation he was experiencing while assigned to Emergency Services. Specifically, plaintiff alleged the following discriminatory actions occurred:

a.  Plaintiff alleged that on one occasion, he met with defendant

O'KEEFE who requested that he sign his performance evaluation. During this meeting, plaintiff alleges that the defendant call him names and used profanity towards him; and

b.  Plaintiff alleged that shortly thereafter, he overheard defendant O'KEEFE speaking to another supervisor about "taking care of [him]." Plaintiff alleges that as a result of this conversation, there were numerous attempts by supervisors assigned to Emergency Services to unfairly discipline him.

39.    Plaintiff alleged that during a meeting with crew members, defendant O'KEEFE told him that he wanted to "kick [plaintiff's] ass."

40.    Plaintiff alleged that during the same meeting, defendant LUDVICK called him an "asshole" and a "prick" and that nobody liked him in the Division.

41.     Plaintiff alleged that defendant O'KEEFE also asked him if he "wanted to take this to the next level."

42.     Upon information and belief, defendant ZEIGLER did not fully investigate his allegations nor did she take any further action with respect to the hostile work environment he was enduring.

43.     Plaintiff alleged that in or around August 2004, he filed a complaint with the Internal Affairs Bureau about the racial discrimination and retaliation that he was experiencing while assigned to Emergency Services.

44.     Plaintiff alleged that on or about August 19, 2004, he filed a complaint with OEEO, Case No.: 229s04, alleging the following discriminatory actions:

      a.  Plaintiff alleged that he was not offered the same opportunities for training that other similarly situated Caucasian officers received;

      b.  Plaintiff alleged that he was denied preferred assignments for no valid reason while other similarly situated Caucasian officers received those same assignments;

      c.  Plaintiff alleged that similarly situated Caucasian officers were constantly assigned overtime hours, while he was not given the same opportunities to work overtime hours;

      d.  Plaintiff alleged that he was constantly threatened with unfair disciplinary action by supervisors assigned to Emergency Services;

      e.  Plaintiff alleged that the Caucasian officers would withhold information from him;

      f.  Plaintiff alleged that the Caucasian officers would constantly attempt to keep him on edge with hostile language towards him;

      g.  Plaintiff alleged that his opinions about Emergency Service operations were never asked as opposed to the Caucasian officers whose opinions were always invited; and

> h. Plaintiff alleged that he was being constantly over-supervised by the Caucasian officers.

45.　Plaintiff alleged that on or about October 13, 2004, he sent a request through his prior attorney to the Chief of Personnel's Office for his personnel records in particular his disciplinary file.

46,　Plaintiff alleged that on or before October 17, 2004, he notified defendant WHITE that his locker was damaged by some unknown individual(s). As a result of the damage to his locker, he had to get dressed in the Men's Room or the Garage.

47.　Plaintiff alleged that the locker room was a hostile and intimidating environment.

48.　Plaintiff alleged that on or about December 4, 2004 while assigned to Emergency Services Squad 4, defendant DIAMOND called him a "boy and a "rat."

49.　Plaintiff alleged that defendant DIAMOND also told him that he hoped that he die.

50.　Plaintiff alleged that when he reported this incident to OEEO, they took no action.

51.　Plaintiff alleged that on or about December 7, 2004, he sent an OEEO complaint through his prior attorney to defendant RAYMOND W. KELLY alleging that he has and continues to be the victim of alleged racial discrimination while assigned to Emergency Services Squad 4.

52.　Plaintiff alleged that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to defendant ZEIGLER.

53.　Plaintiff alleged that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to any investigative unit.

54.     Plaintiff alleged that defendant. RAYMOND W. KELLY did not take any affirmative employment action with respect to the above-mentioned allegations to investigate his claims of racial discrimination.

55.     Plaintiff alleged that defendant RAYMOND W. KELLY's insensitivity to such matters, are indicative of a pattern and pattern of discriminatory animus that exists within the NYPD with respect to minority police officers.

56.     Plaintiff alleged that on or about December 10, 2004, he sent an OEEO complaint through his prior attorney to defendant RAYMOND W. KELLY alleging that he has and continues to be the victim of alleged racial discrimination while assigned to Emergency Services Squad 4.

57.     Plaintiff alleged that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to defendant ZEIGLER.

58.     Plaintiff alleged that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to any investigative unit.

59.     Plaintiff alleged that defendant RAYMOND W. KELLY did not take any affirmative employment action with regard to the above-mentioned allegations to investigate his claims of racial discrimination.

60.     Plaintiff alleged that defendant RAYMOND W. KELLY's insensitivity to such matters is indicative of a pattern and pattern of discriminatory animus that exists within the NYPD with respect to minority police officers.

61.     Plaintiff alleged that while assigned to Emergency Services for approximately five and one-half (5 1/2) years, he was not afforded the same opportunities as other similarly situated Caucasian officers.

62.     Plaintiff alleged that while assigned to Emergency Services he was intentionally being isolated within the unit where there were only ten (10) percent African-Americans, thirty (30) out of three hundred (300) officers assigned there, he being the only African-American in his squad.

63.     Plaintiff alleged that while assigned to Emergency Services Squad 4, defendant WHITE would make derogatory statements about him.

64.     Plaintiff alleged that defendant WHITE called him an "asshole" and "incompetent."

65.     Plaintiff alleged that defendant WHITE made these above-mentioned statements in front of other members assigned to Emergency Services Squad 4.

66.     Plaintiff alleged that on numerous occasions, defendant WHITE would make him leave the stationhouse upon his arrival.

67.     Plaintiff alleged that on or about January 7, 2005, defendant DIAMOND called him a "boy."

68.     Plaintiff alleged that on or about January 7, 2005, defendant DIAMOND told him that "I hope you die you rat!"

69.     Plaintiff alleged that on or about January 7, 2005, he filed a complaint with regard to the above-mentioned allegations to OEEO.

70.     Plaintiff alleged that on or about January 31, 2005, he filed a complaint with OEEO regarding defendant WHITE.

71.     Plaintiff alleged that on or about August 22, 2005, in retaliation for filing numerous complaints with his supervisors and OEEO, defendant DEAN administratively transferred him back to the 113th Precinct.

72.     Plaintiff alleged that on or about August 22, 2005, he sent a OF 49 to defendants' RAYMOND W. KELLY; ZEIGLER and John Connolly alleging that he has and continues to be the victim of alleged racial discrimination and retaliation while assigned to Emergency Services Squad 4.

73.     Plaintiff alleged in this memorandum that other African-American officers within Emergency Services are suffering from the same conditions of racial discrimination.

74.     Plaintiff alleged that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to defendant ZEIGLER.

75.     Plaintiff alleged that defendant RAYMOND W. KELLY referred the above-mentioned allegations to any investigative unit.

76.     Plaintiff alleged that defendants' RAYMOND W. KELLY and ZEIGLER did take any affirmative employment action with regard to the above-mentioned allegations to investigate his claims of racial discrimination and retaliation.

77.     Plaintiff alleged that, defendants' RAYMOND W. KELLY and ZEIGLER's insensitivity to such matters are indicative of a pattern and pattern of discriminatory animus that exists within the NYPD with respect to minority police officers.

78.     Plaintiff alleged that on or about August 29, 2005, he sent a OF 49 to Secretary Richard T. Tirelli, Detective Endowment Association alleging that he was administratively transferred by defendant DEAN in retaliation for his prior complaints of racial discrimination he endured while assigned to Emergency Services.

79.     Plaintiff alleged that on or about September 9, 2005, he was notified by Deputy Inspector Donna G. Jones, Commanding Officer Performance Analysis Section that he was being placed on Level I Monitoring, which is a Command Level Monitoring Program where his performance was to be closely monitored and evaluated for a minimum of twelve months.

80.     Plaintiff alleged that on or about September 20, 2005, he sent a OF 49 to Deputy Inspector Donna G. Jones, Commanding Officer Performance Analysis Section that he wishes to

appeal his evaluation and that his placement into the Command Level Monitoring Program was in retaliation for complaining about racial discrimination and retaliation he endured while assigned to Emergency Services.

81.    Plaintiff alleged that on or about February 21, 2006 more than one year after filing the majority of his allegations, he received a letter from defendant ZEIGLER with the result of her findings. Defendant ZEIGLER found that:

  a.   The allegations against defendant DIAMOND alleging race discrimination based on a disparaging remark was deemed Unsubstantiated;

  b.   The allegation of race discrimination based on the denial of chauffeur training was deemed Unsubstantiated;

  c.   The allegation of retaliation based on the denial of overtime was deemed Unfounded;

  d.   The allegation against defendant DEAN alleging retaliation based on temporary assignment to the ESU Medical Unit was deemed Exonerated; and

  e.   The allegation of retaliation based on a denial of an individual vacation day was deemed Exonerated.

82.    Plaintiff alleged that he attempted to schedule a meeting with the Commanding Officer of the 113th Precinct to discuss the deteriorating terms and conditions of his employment and the effect on his health, but to date the Commanding Officer has not met with him.

## FACTS UNDERLYING PLAINTIFF'S CAUSES OF ACTION

83. On or about August 30, 1993, plaintiff was appointed as a police officer with the NYPD.

84. As a result of the prior law suit filed by Plaintiff, defendants retaliated against him and created a hostile work environment.

85. On or about July 1, 2011, while Plaintiff was present for duty, defendant KLIEN failed to acknowledge plaintiff's presence at roll call and plaintiff received no assignment from his supervisor. This prompted plaintiff to walk out.

86. Plaintiff alleges that defendant VENTRI, had on numerous occasions administered roll call and failed to acknowledge plaintiff's presence.

87. On or about July 1, 2011, he advised defendant VALENTI, of the NYPD Medical Division, of his line of duty related injuries sustained on September 11, 2001. Defendant VALENTI stated that the injuries were not enough to warrant an Article 11 pension.

88. Plaintiff suffered a line of duty injury related to 9/11. However VALENTI informed Plaintiff that he did not have any injury and was forced to work full duty.

89. The NYPD Medical Division had paperwork that states that plaintiff is to be on limited duty yet Plaintiff has been on full duty patrol since February 2011.

90. On or about July 22, 2011, Plaintiff advised the NYPD Medical Division that Plaintiff's doctor has prescribed him narcotics for his line of duty injuries. Nevertheless Plaintiff was assigned to patrol and the NYPD Medical Division disregarded his physician's request to place Plaintiff on limited capacity.

91.     On or about August 18, 2011, Plaintiff was ordered to criminal court relating to an arrest dating to December 23, 2009. There Plaintiff was targeted by Assistant District Attorney Courtney Finnerty who called plaintiff an "ass" and "dude" among other officers, and referred to Plaintiff without regard to his rank.

92.     After the incident with Assistant District Attorney Finnerty, Plaintiff brought the incident to the attention to Sergeant Muddery of the IAD. Sergeant Muddery stated to Plaintiff that he would be contacted about the investigation, but Plaintiff was never contacted.

93.     In August 2011, defendant MILLIGAN, did not allow Plaintiff to attend a department authorized visit to Plaintiff's doctor for a job related injury, threatening to suspend Plaintiff if he did not come into work. As such, Plaintiff went to work despite being in pain.

94.     In August 2011, defendant MILLIGAN, denied a requested overtime slot which was requested by the Plaintiff, the application for the overtime slot had to be resubmitted.

95.     On or about September 1, 2011 Plaintiff filed a grievance with the Grievance Committee against the ADA Courtney Finnerty.

96.     Plaintiff alleges that in September 2011, defendant MILLIGAN, accused plaintiff of malingering during a recent doctor's visit concerning a line of duty injury.

97.     On or about September 29, 2011, a Lieutenant from the NYPD EEO visited the 113th precinct and told those present of the conversation Plaintiff had with her, stating that Plaintiff had called her about EEO related issues. Such communication violated plaintiff' rights of confidentially.

98.    As a result of the disclosure of Plaintiff's complaints to EEO, Plaintiff's co-works began to isolate him and refusing to be his partner.

99.    On or about September 29, 2011, Plaintiff was ordered to make a drug and guns arrest without any backup provided. This kind of arrest is always conducted by numerous police officers backing each other up.

100.    On or about November 17, 2011, plaintiff was informed by defendant VENTRI that Plaintiff could no longer arrive late to roll call. Other members of the precinct were allowed to walk into roll call at anytime. This retaliatory action was the result of Plaintiff voicing his concern regarding a performance evaluation which was unsatisfactory despite the fact that he has always performed very well on the job.

101.    On or about November 20, 2011, that defendant VENTRI told plaintiff he could no longer arrive late to roll call. After plaintiff inquired as to why he could no longer arrive late, defendant VENTRI replied "I know about you and the EEO complaints."

102.    Plaintiff alleges that on or about March 14, 2012, Plaintiff was put on forced monitoring based on his poor performance due to his alleged poor performance.

103.    Plaintiff alleges that his most recent performance evaluations have been unsatisfactory despite the fact that he has always performed very well on the job.

104.    As a result of the unlawful demotion and subsequent retaliatory conduct by the Defendants, Plaintiff has been economically and emotion damaged.

## COUNT I
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

105.   Plaintiff re-alleges paragraphs 1 through 104 and incorporates them by reference as paragraphs 1 through 104 of Count I of this Complaint.

106.   Plaintiff alleges that defendant CITY through its agents engaged in a pattern and practice of discrimination against him with respect to the terms, conditions and privileges of employment because of the plaintiff's race and color in violation of 42 U.S.C. § 2000e-2.

107.   As part of its pattern and practice of employment discrimination, defendant CITY through its agents treated plaintiff in a manner indicative of race and color discrimination, with respect to its investigation, analysis, and subsequent cover-up, of their discriminatory behavior and in retaliation for having complained about discrimination..

108.   Defendant CITY knew or should have known about race and color discrimination in the workplace because of their prior history of discriminatory conduct against the plaintiff and other similarly situated individuals.

109.   Defendant CITY failed and refused to take appropriate action to end the discriminatory treatment and conditions which plaintiff was subjected to, which was clearly motivated by race and color discrimination in a clear demonstration of bad faith.

110.   That as a result of the discriminatory acts of defendant CITY through its agents, plaintiff suffered depression and anxiety.

111.   Defendant acted in an outrageous and systematic pattern of oppression, bad faith and cover-up, directed at plaintiff and continued from in or around 2010, until this day.

112.   As a result of the acts of defendant under color of law, plaintiff suffered emotional distress, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

113. Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00.

## COUNT II
## RETALIATION
## IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

114. Plaintiff re-alleges paragraphs 1 through 113 and incorporates them by reference as paragraphs 1 through 113 of Count II of this Complaint.

115. Plaintiff alleges that defendant CITY through its agents engaged in various retaliatory actions against plaintiff as a result of his opposition to race and color discrimination and as a result of his filing such complaints with the NYPD and the EEOC, in violation of 42 U.S.C. § 2000e-3(a).

116. That as a result of the illegal acts of defendant CITY through its agents, plaintiff suffered depression and anxiety.

117. Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00.

## COUNT III
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

118. Plaintiff re-alleges paragraphs 1 through 117 and incorporates them by reference as paragraphs 1 through 117 of Count III of this Complaint.

119.    Plaintiff alleges that defendant CITY through its agents engaged in various severe and hostile actions towards plaintiff as a result of his opposition to race and color discrimination and as a result of his filing such complaints with the NYPD and the EEOC.

120.    That as a result of the severe and hostile acts of the defendant CITY through its agents, plaintiff suffered depression, anxiety and loss of job opportunities.

121.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

### COUNT IV
### RACE AND COLOR DISCRIMINATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

122.    Plaintiff re-alleges paragraphs 1 through 121 and incorporates them by reference as paragraphs 1 through 121 of Count IV of this Complaint.

123.    That by the aforesaid discriminatory acts and omissions of defendants' acting individually and acting in their capacities as public officials of defendant CITY interfered with plaintiff's right to enforce contracts under the color of State Law.

124.    That the purpose of defendants' in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York including but not limited to enjoy his right to freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, and deprivation of life, liberty, and property without due process of law.

125.    Pursuant to their conduct, the defendants' acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U,S.C. § 1981.

126.    As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

127.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT V
## RETALIATION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

128.    Plaintiff re-alleges paragraphs 1 through 127 and incorporates them by reference as paragraphs 1 through 127 of Count V of this Complaint.

129.    Plaintiff alleges that defendants' engaged in various retaliatory actions against him acting individually and in their capacities as public officials of defendant CITY as a result of his opposition to race and color discrimination.

130.    That the purpose of defendants' in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

131.     Pursuant to their conduct, the defendants' acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

132.     As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

133.     Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT VI
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

134.     Plaintiff re-alleges paragraphs 1 through 133 and incorporates them by reference as paragraphs 1 through 133 of Count VI of this Complaint.

135.     Plaintiff alleges that defendants' engaged in various severe and hostile actions against him acting individually and in their capacities as public officials of defendant CITY as a result of his opposition to race and color discrimination.

136.     That the purpose of defendants' in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

137.    Pursuant to their conduct, the defendants' acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

138.    As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

139.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT VII
## RETALIATION
## IN VIOLATION OF 42 U.S.C. § 1983

140.    Plaintiff re-alleges paragraphs 1 through 139 and incorporates them by reference as paragraphs 1 through 139 of Count VII of this Complaint.

141.    Individual Defendants' under color of law, personally interfered with and deprived plaintiff of his pension and constitutional rights pursuant to the 14th Amendment Equal Protection, including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

142.    Individual Defendants' acting individually and in their official capacities as public officials of defendant CITY, under color of law, and having been fully advised that plaintiff was being deprived of his constitutional rights, either acted in a concerted, malicious

intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

143.   Defendants' in acting to deprive plaintiff of his civil rights, failed to thoroughly investigate his allegations of discriminatory conduct in the workplace.

144.   Defendants' in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

145.   Defendants' acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or around 1999, until this day.

146.   As a result of the acts of the defendants' under color of law, plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

147.   Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

### COUNT VIII
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF 42 U.S.C. § 1983

148.   Plaintiff re-alleges paragraphs 1 through 147 and incorporates them by reference as paragraphs 1 through 147 of Count VIII of this Complaint.

149.    Individual Defendants' under color of law, personally interfered with and deprived plaintiff of his constitutional rights under the 14th Amendment Equal Protection Clause  including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

150.    Individual Defendants' acting individually and in their official capacities as public officials of defendant CITY, under color of law, and having been fully advised that plaintiff was being deprived of his pension and constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

151.    Defendants' in acting to deprive plaintiff of his civil rights, failed to thoroughly investigate his allegations of discriminatory conduct in the workplace.

152.    Defendants' in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

153.     Defendants' acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or around 2010, until this day.

154.     As a result of the acts of the defendants' under color of law, plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

155.     Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT IX
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

156.     Plaintiff re-alleges paragraphs 1 through 155 and incorporates them by reference as paragraphs 1 through 155 of Count IX of this Complaint.

157.     New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The same legal standards that apply to Title VII claims apply to claims brought under this law.

158.     Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT X
## RETALIATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

159.    Plaintiff re-alleges paragraphs 1 through 158 and incorporates them by reference as paragraphs 1 through 158 of Count X of this Complaint.

160.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create an atmosphere where retaliation is encouraged and/or tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

161.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT XI
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

162.    Plaintiff re-alleges paragraphs 1 through 161 and incorporates them by reference as paragraphs 1 through 161 of Count XI of this Complaint.

163.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create a severe and hostile environment where retaliation, race and color discrimination are encouraged and/or

tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

164.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT XII
## DISABILITY DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

165.    Plaintiff re-alleges paragraphs 1 through 164 and incorporates them by reference as paragraphs 1 through 164 of Count XII of this Complaint.

166.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of a disability. The law also makes it unlawful to create a severe and hostile environment where disability, retaliation, race and color discrimination are encouraged and/or tolerated.

167.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT XIII
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## NEW YORK CITY ADMINSTRATIVE CODE § 8-502

168.    Plaintiff re-alleges paragraphs 1 through 167 and incorporates them by reference as paragraphs I through 167 of Count XIII of this Complaint.

169.    New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The same legal standards that apply to Title VII claims apply to claims brought under New York City Administrative Code § 8-502.

170.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT XIV
## RETALIATION
## IN VIOLATION OF
## NEW YORK CITY ADMINSTRATIVE CODE § 8-502

171.    Plaintiff re-alleges paragraphs I through 170 and incorporates them by reference as paragraphs 1 through 170 of Count XIV of this Complaint.

172.    The New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create an atmosphere where retaliation is encouraged and/or tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

173.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT XV
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-502

174.    Plaintiff re-alleges paragraphs 1 through 173 and incorporates them by reference as paragraphs 1 through 173 of Count XV of this Complaint.

175.    New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create a severe and hostile environment where retaliation, race and color discrimination are encouraged and/or tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

176.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## COUNT XVI
## DISABILITY DISCRIMINATION
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE §8-502

177.    Plaintiff re-alleges paragraphs 1 through 176 and incorporates them by reference as paragraphs 1 through 176 of Count XII of this Complaint.

178.    New York City Administrative Code § 8-502 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of a disability. The law also makes it unlawful to create a severe and hostile environment where disability, retaliation, race and color discrimination are encouraged and/or tolerated.

179.    Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $1,000,000.00, and punitive and exemplary damages in the amount of $1,000,000.00.

## JURY TRIAL

The Plaintiff, requests a jury trial on all questions of fact raised by the Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this honorable Court grant the following relief:

1.      Declare that the aforementioned actions of Defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution and New York City Human Rights Law and Administrative Code along with all applicable statutes;

2.      Declare that the aforementioned discriminatory actions of Defendants were in violation of New York State Executive Law § 296, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964, as amended;

3.      Enjoin the Defendants and their successors, agents, servants, employees and those in active concert or participation with them from subjecting their employees to retaliatory and harassing conduct based on their race, and gender and her engagement in the protected activity of formally complaining of said discrimination;

4.      As and for Plaintiff's First Claim, grant Plaintiff the sum of $1,000,000.00, along with punitive and exemplary damages in the amount of $1,000,000.00;

5.      As and for Plaintiff's Second Claim, grant Plaintiff the sum of $1,000,000.00 along with punitive and exemplary damages in the amount of $1,000,000.00;

6.      As and for Plaintiff's Third Claim, grant Plaintiff the sum of $1,000,000.00 along with punitive and exemplary damages in the amount of $1,000,000.00;

7.      As and for Plaintiff's Fourth Claim, grant Plaintiff the sum of $1,000,000.00 along with punitive and exemplary damages in the amount of $1,000,000.00;

8.      As and for Plaintiff's Fifth Claim, grant Plaintiff the sum of $1,000,000.00 along with punitive and exemplary damages in the amount of $1,000,000.00;

9.     As and for Plaintiff's Sixth Claim, grant Plaintiff the sum of $1,000,000.00 along with punitive and exemplary damages in the amount of $1,000,000.00;

10.     As and for Plaintiff's Seventh Claim, grant Plaintiff the sum of $1,000,000.00 along with punitive and exemplary damages in the amount of $1,000,000.00;

11.     As and for Plaintiff's Eighth Claim, grant Plaintiff the sum of $1,000,000.00 along with punitive and exemplary damages in the amount of $1,000,000.00;

12.     As and for Plaintiff's Ninth Claim, grant Plaintiff the sum of $1,000,000.00, along with punitive and exemplary damages in the amount of $1,000,000.00;

13.     As and for Plaintiff's Tenth Claim, grant Plaintiff the sum of $1,000,000.00, along with punitive and exemplary damages in the amount of $1,000,000.00;

14.     As and for Plaintiff's Eleventh Claim, grant Plaintiff the sum of $1,000,000.00, along with punitive and exemplary damages in the amount of $1,000,000.00;

15.     As and for Plaintiff's Twelfth Claim, grant Plaintiff the sum of $1,000,000.00, along with punitive and exemplary damages in the amount of $1,000,000.00;

16.     As and for Plaintiff's Thirteenth Claim, grant Plaintiff the sum of $1,000,000.00, along with punitive and exemplary damages in the amount of $1,000,000.00;

17.     As and for Plaintiff's Fourteenth Claim, grant Plaintiff the sum of $1,000,000.00, along with punitive and exemplary damages in the amount of $1,000,000.00;

18.     As and for Plaintiff's Fifteenth Claim, grant Plaintiff the sum of $1,000,000.00, along with punitive and exemplary damages in the amount of $1,000,000.00;

19.     As and for Plaintiff's Sixteenth Claim, grant Plaintiff the sum of $1,000,000.00, along with punitive and exemplary damages in the amount of $1,000,000.00;

20.     Grant Plaintiff all costs for this action, including reasonable attorney's fees; and

21.     Grant Plaintiff such other and further relief as this Court deems just.

Dated: Lake Success, New York
        December 21, 2012

Yours etc,
Cronin & Byczek, LLP

LINDA M. CRONIN (LC0766)
Attorneys for Plaintiff
1983 Marcus Ave, Suite C-120
Lake Success, New York 11042
(516) 358-1700

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

RECEIVED

2012 SEP 26 A 11:00

CRONIN & BYCZEK, LLP.

FIRST CLASS

UNITED STATES POSTAGE
PITNEY BOWES
02 1R          $ 00.45°
000200³3026
MAILED FROM ZIP CODE 10004   SEP 24 2012

Mr. Gregory Anderson
c/o Linda M. Cronin, Esq.
Cronin & Byczek, LLP
Fountains at Lake Success
1983 Marcus Avenue, Suite C-120
Lake Success, NY 11042

110423²2017 C053

EEOC Form 161 (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Gregory Anderson<br>21 Princeton Drive<br>Walden, NY 12586 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2012-02447 | Arlean C. Nieto,<br>Supervisory Investigator | (212) 336-3676 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Kevin J. Berry, an*                                    9-21-2012

Enclosures(s)

Kevin J. Berry,
District Director

(Date Mailed)

cc:

| Thomas P. Doepfner<br>Assistant Deputy Commissioner<br>NEW YORK CITY POLICE DEPARTMENT<br>One Police Plaza<br>Room 1406<br>New York, NY 10038 | Linda M. Cronin, Esq.<br>CRONIN & BYCZEK, LLP<br>Fountains At Lake Success - 1983 Marcus Avenue<br>Suite C-120<br>Lake Success, NY 11042 |
|---|---|